IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Cynthia Applebaum, Warren Black,
Anita Matlock, Patrick Ridgeway, and
William Sly, individually and on behalf
of all others similarly situated,

                       Plaintiffs,

vs.

Case No. 2:14-cv-13005-AC-MKM
Hon. Avern Cohn

MGM Grand Detroit, LLC.,

                       Defendant.

_____/

**JOINT MOTION IN SUPPORT OF APPROVAL OF SETTLEMENT OF COLLECTIVE ACTION UNDER THE FLSA, CERTIFYING THE COLLECTIVE FOR PURPOSES OF SETTLEMENT, AND DIRECTING NOTICE TO THE COLLECTIVE**

Plaintiffs, by and through their undersigned counsel, individually and on behalf of all others similarly situated, move for an order granting approval to the class action settlement described in the Joint Stipulation Of Settlement and Release, attached hereto as Exhibit 1 (hereinafter referred to as "Joint Stipulation"), as supported by the attached Memorandum of Law and Class Counsel's Declaration, and further determining that:

1.     The terms and conditions of the proposed settlement between the Plaintiff Class and Defendant defined and described in the Joint Stipulation of Settlement and Release and Exhibits are fair, reasonable, and adequate.

2.     That the form of the Notice of Settlement and the method of disseminating the Notice to the Collective, as described in the Joint Stipulation and Exhibits thereto is fair, reasonable and adequate to the Collective.

3.     That the method of allocating a settlement award to each member of the Settlement Class is fair, reasonable and adequate.

4.     That Class Representatives, Class Deponents and Class Participants defined in paragraph 12(g) should be awarded service awards for their time, effort and risks undertaken to represent the class and to secure the benefits for the entire class under the settlement.

5.     That Class Counsel should be awarded the stated amount of fees and costs described in paragraph 14 of the Joint Stipulation of Settlement and Release, as fair and reasonable attorneys' fees and costs, payable by Defendant, as compensation for their time, efforts, risks and expense in representing the Collective on a contingent basis and for securing the pool of benefits for the entire Collective under the Settlement;

6.     That any objections to the settlement as outlined within the Joint

Stipulation to the extent any exist, are without basis, and are not well founded, and should be overruled in their entirety;

7. For any other relief that is just and equitable in the circumstances.

8. Defendant consents to the relief requested herein.

9. This motion is based upon the court files, memoranda, and affidavits to be submitted and arguments of counsel.

By: */s/ Megan A. Bonanni P52079*
Megan A. Bonanni P52079
Robert W. Palmer P31704
Pitt McGehee Palmer & Rivers, P.C.
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800

By: *Elayna J. Youchah w/consent*
Elayna J. Youchah, Bar No. 5837
youchahe@jacksonlewis.com
Jackson Lewis P.C.
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 921-2460

Attorneys for Plaintiffs

Attorneys for Defendant

Dated: April 19, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


Cynthia Applebaum, Warren Black,
Anita Matlock, Patrick Ridgeway, and
William Sly, individually and on behalf
of all others similarly situated,

                                Case No. 2:14-cv-13005-AC-MKM
        Plaintiffs,         Hon. Avern Cohn
vs.


MGM Grand Detroit, LLC.,

        Defendant.
_____/


**BRIEF IN SUPPORT OF APPROVAL OF SETTLEMENT OF COLLECTIVE ACTION UNDER THE FLSA, CERTIFYING THE COLLECTIVE FOR PURPOSES OF SETTLEMENT, AND DIRECTING NOTICE TO THE COLLECTIVE**

## I.      INTRODUCTION

1.    This is a suit for alleged violation of the Fair Labor Standards Act

("FLSA"). Although Defendant denies any and all liability, the parties have

agreed to a settlement, the terms of which are defined and described in the

Joint Stipulation and Exhibits.

      Following an extensive investigation, partially-completed formal

discovery and extensive arm's-length negotiations, Plaintiffs,

individually and on behalf of all others similarly situated, and Defendant MGM Grand Detroit has agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves a bona-fide dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations conducted by counsel well-versed in wage and hour law.

Accordingly, Plaintiffs respectfully request that the Court issue an order: (1) approving the $450,000 settlement as set forth in paragraph 12(c) of the Joint Stipulation of Settlement and Release ("Joint Stipulation") attached as Exhibit 1; approving the proposed Notice of Settlement ("Notices") (attached as Exhibits 1(b) and 1(f) and Claim and Consent Form (attached as 1(a)) and direct their distribution; approving service awards of $7,500 each to the  Class Representatives, $5,000 to the Class Deponents and $3,500 to the Class Participants as defined in paragraph 12(g) of the Joint Stipulation; approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees and an additional reimbursement of costs and litigation expenses; and incorporating the terms of the Settlement Agreement.

## II.   **PERTINENT FACTS**

This matter was originally filed on August 1, 2014. (Dkt. 1) The Complaint sets forth a detailed recitation of factual and legal allegations pertaining to FLSA claims and the basis for collective action certification under Section 216(b). There are 5 named Plaintiffs.  Throughout the course of this litigation, 32 other individuals opted in to the litigation.

Prior to engaging in full-blown merits discovery, counsel for the respective parties began discussing the merits of the case and certification difficulties for each side. The Parties agreed to exchange extensive discovery documents and submitted the case to facilitation with a nationally recognized FLSA facilitator.  While the initial facilitation did not resolve the matter, it did succeed at narrowing the issues for litigation.

The parties thereafter engaged in discovery.  Defendant took the depositions of 11 Plaintiffs.  The parties also exchanged relevant documents, including providing answers to multiple sets of interrogatories and documents responsive to numerous requests for the production of documents.  Defendant produced payroll data as well as numerous policies and other relevant company documents. The parties continued to engage in settlement discussions throughout discovery.

After a full review of this information and open and full debate over

the legal and factual issues, the Parties, who have been represented by counsel at all times, agreed that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues.

After the general terms of the settlement were reached, the Parties began the process of drafting comprehensive settlement agreements that would be entered into between each of the named and opt-in Plaintiffs and the Defendant. With compromise from both sides, the settlement agreements now before the Court for approval were reached.

The negotiations leading to this settlement were adversarial, non-collusive, and conducted at arms' length. The Parties share an interest in fully and finally resolving the issues raised in this action. Because the Parties recognized the expense and risks associated with prosecution and defense through trial and any possible appeal, as well as the risk of uncertainty of the outcome inherent in any litigation, they agreed to be bound by the settlement agreements which they now ask this Court to approve. The Parties have conditioned the overall settlement agreements upon the Court's approval of all their terms.

## III.   <u>SUMMARY OF THE SETTLEMENT TERMS</u>

### A.   **Stipulation to Class Certification**

Solely for the purpose of settling this case, the Parties stipulate and

agree that the requisites for establishing class certification with respect to the Settlement Class have been and are met.

### B.    The Settlement Fund

The Joint Stipulation of Settlement and Release establishes a maximum settlement fund of $450,000 to settle claims against Defendant (the "Fund"). The Fund covers eligible Settlement Class Members' awards, any Court-approved service awards to Plaintiffs and Opt-In Plaintiffs, any Court-approved attorneys' fees and costs, and the settlement claims administrator's ("Settlement Administrator's") fees and costs.

### C.    Eligible Employees

Eligible Settlement Class Members are any and all current and former Floor Supervisors and Assistant Floor Supervisors employed by Defendant at any time during the class period.  Within 10 days of the Court's approval of the settlement, Defendant will provide the Settlement Administrator with the last known contact information for all eligible Settlement Class Members. (Exhibit 1, ¶ 13) The Proposed Notice alerts eligible Settlement Class Members to the terms of the settlement, their individual estimated settlement allocation, the scope of the release, and also informs them that they are required to properly complete and

timely return the Claim and Consent Form attached thereto if they wish to be included in the settlement and receive payment. *See* (Proposed Notice), Class members will have 30 calendar days from the mailing date of the Notice within which to postmark their Claim and Consent Form. (Id ¶ 12(i)).

### D.    Release

A failure to submit a valid and timely Claim and Consent Form does not affect exclusion from the Settlement Class.   Instead, all Class Members shall remain members of the Settlement Class and will be bound by all terms of the Settlement and any Final Order and Judgment entered by the Court unless they have excluded themselves from the Settlement Class in the manner provided in the Joint Stipulation of Settlement and Release. *Id* ¶ 12(i).

### E.    Allocation Formula

Eligible Settlement Class Members will be eligible for a settlement payment pursuant to an allocation formula based on the number of shifts they worked during the relevant period. *Id*.¶ 12(d).   The total settlement amount was attained by determining the total number of shifts worked by the Settlement Class over the Class Period.   Each Settlement Class Member will receive a proportionate amount of the funds available to be distributed to the

Settlement Class based on the percentage of shifts each worked as compared with the total amount of shifts worked by the entire Settlement Class. Based on this formula, because there were 82,710 shifts worked by the Settlement Class over the Class Period, each Authorized Class Member will receive approximately $1.63 per shift. *Id.* Each Settlement Class Members' payment from the Net Settlement Amount and will be allocated and paid as follows: one-third of his/her Settlement Award will be allocated to alleged unpaid wages for which IRS Forms W-2 will issue, one-third of his/her Settlement Award will be allocated to alleged unpaid penalties, and the other one-third of his/her Settlement Award will be allocated to alleged unpaid interest. The unpaid penalties and unpaid interest will be reported on IRS Forms 1099-MISC will issue. Id ¶ 12(e).

### F.     Service Awards

The Settlement Agreement provides that, with Court approval, the Class Representatives, Class Deponents and Class Participants will receive service awards ranging from $3,500- $7,500 in recognition of their assistance rendered in obtaining the benefits of the settlement for the Collective as well as the risks they took to do so. *Id*. ¶ 12(g). As set forth in the Joint Stipulation, Class Representative, Class Deponents and Class Participants assisted counsel in the investigation of Plaintiffs'

claims, produced documents in response to Defendant's document requests, attended meetings, and provided information. Additionally, Class Representatives and Class Deponents worked with Plaintiffs' Counsel to prepare for their depositions and sat for full-day depositions. *Id* ¶ 12(g).

### G.    Settlement Claims Administration

The parties have retained a wage and hour claims administrator, to serve as the Settlement Administrator. The Settlement Administrator's fees of $7,500 will be paid from the Settlement Fund.  Exhibit 1(Joint Stipulation) ¶ 11.

### H.    Attorneys' Fees and Litigation Costs

Subject to Court approval, Plaintiffs' Counsel will receive $150,000 (one-third of the settlement fund of $450,000) as attorneys' fees and reimbursement of actual reasonable out-of-pocket costs and expenses. *Id*. ¶ 14.  As part of the Settlement, Defendant has agreed not to object to an award for fees and costs up to this amount.

### IV.    <u>ARGUMENT</u>

### 2.    A.    Standard of Review

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Arrington v.*

*Mich. Bell Tel. Co.*, 2012 U.S. Dist. LEXIS 157362, *1 (E.D. Mich. Nov. 2, 2012) (J. Lawson) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Therefore, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness. If the settlement is a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *2 (internal citations and quotations omitted); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1354.

Courts often draw on Rule 23 case law to guide them in reviewing and approving FLSA settlements. The Sixth Circuit has identified seven factors that should aid courts in the determination of whether a proposed FLSA settlement is fair, reasonable, and adequate:

> 1.   (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Arrington*, 2012 U.S. Dist. LEXIS 157362, *2-3; *see also Crawford v.*

*Lexington-Fayette Urban Cnty. Gov't, CIV. A. 06-299-JBC*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) *(citing Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). The above list is not exhaustive and courts do not necessarily apply all of the factors; rather, the factors are guideposts used to determine the fairness of a proposed settlement. "A court applying these factors must do so in the context of the actual settlement." *Arrington*, 2012 U.S. Dist. LEXIS 157362, *3.

### 1.   <u>The Absence of Fraud or Collusion in the Settlement</u>

In the instant case, there is a *bona fide* dispute over whether Defendant violated the FLSA.  Plaintiffs allege Defendant violated the FLSA because they failed to pay Plaintiffs overtime.  Defendant denies all such claims.

As is evident from the amount to be paid to Plaintiffs in this settlement, it is clear there was no fraud or collusion. The settlement will provide Settlement Class Members with substantial awards and will eliminate the risks and costs both sides would bear if this litigation continued to resolution on the merits. The Parties exchanged hundreds of documents and other data to educate each other about their position. In agreeing upon the proposed settlement, the Parties had sufficient

information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### 2.    Complexity, Expense, and Likely Duration of the Litigation

The complexity, expense, and length of continued litigation militate in favor of this settlement.  Both sides acknowledge that the Parties' respective positions were substantially complicated and uncertain due to numerous factual disputes and legal theories. Should this case continue, the Court will be required to rule on pre-discovery motions such as whether Defendant is entitled to credit for breaks, including meal breaks.

On the other hand, if Plaintiffs ultimately prevailed at trial, Defendant would be faced with the prospect of a verdict against it and the obligation to pay Plaintiffs' attorneys' fees and costs anticipated to be in excess of $600,000. If Defendant ultimately prevailed, Plaintiffs face dismissal of their claims and no recovery.

In light of the foregoing, the Parties agree that either outcome is possible in this litigation. For these reasons, this settlement is a reasonable means for the Parties to minimize future risks and litigation costs.

### 3.    Amount of Discovery Engaged In By the Parties

Formal discovery took place over the course of several months.  The

parties exchanged numerous documents and other data relevant to Defendant's pay practices, payroll records and policies. All Plaintiffs provided Defendant with answers and documents in response to extensive Interrogatories and Requests for the Production of Documents.  Each party spent considerable time and effort in the compilation of damage assessments for each Plaintiff, which required an analysis of company data related to hours worked as well as determining the proper formula for overtime calculation to apply and further to assess whether there were any appropriate credits that should be applied which would have the effect of offsetting any overtime that may be due any Settlement Class Member.  For this reason, the Parties had several meetings specifically related to what assumptions should be made with regard to the calculation of overtime. The Parties reviewed this information, shared it with their respective clients, had discussions about it, and ultimately used it to evaluate the merits of their respective claims and defenses.  One of the driving factors in this settlement was the desire to settle the case prior to incurring f u r t h e r  extensive attorneys' fees and costs associated with continuing with formal discovery and motion practice.

### 4.    <u>The Likelihood of Success on the Merits</u>

Plaintiffs' likelihood of success on the merits and the amount they

would be awarded is uncertain, further suggesting that this settlement is fair and appropriate. Plaintiffs assert, and Defendant denies, that they are owed compensation due to Defendant's alleged violations of the FLSA. The range of possible recovery by Plaintiffs is open to dispute. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and an exercise of resources by both Parties, the specific amount of their recovery is uncertain. Thus, this proposed settlement is a fair and reasonable settlement in relation to the potential risks and recovery in this case.

### 5.   The Opinions of Class Counsel and the Class Representatives

There are 5 named Plaintiffs and 32 opt-in Plaintiffs in this litigation. Plaintiffs' counsel has met with the named Plaintiffs and opt-in Plaintiffs wherein the specific terms of the settlement were discussed.  Plaintiffs' counsel, the 5 named Plaintiffs and 32 opt-ins are of the opinion that this proposed settlement is a fair and reasonable compromise of this dispute.  This constitutes approximately 30% of the Settlement Class.

### 6.   The Public Interest

The public interest is served by the proposed settlement as it serves the purpose and intent of Congress in enacting the FLSA—"to raise

substandard wages and to give additional compensation for overtime work ... thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945)(*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)).   The settlement also serves the purpose of ensuring "just, speedy, and inexpensive" resolution of this action.  Fed R. Civ. Pro.1.

## B.   The Settlement Is Fair and Reasonable and Should Be Approved

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014); *Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11 Civ. 400, 2012 WL 6707008, at *1-2 (E.D. Tenn. Dec. 26, 2012).[1]

---

[1] "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."   *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *2 (D. Conn. May 23, 2013).  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Lynn's Food Stores*, 679 F.2d 1354; *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06

Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 Collective action. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for Collective certification under Fed. R. Civ. P. 23, it has not done so in the FLSA."); *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 594 (S.D. Ohio 2002) ("[I]n an FLSA "opt-in" collective action the requirements need not be strictly observed because there are no absent Class Members for the court to protect."). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, *see Thompson v. Bruister & Assocs., Inc.*, 967 F. Supp. 2d 1204, 1222 (M.D. Tenn. Aug. 23, 2013); *Bozak*, 2014 WL 3778211, at *3. Accordingly, the exacting

---

Civ. 299, 2008 WL 4724499.

standards for approval of a Collective action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b) at *9 (E.D. Ky. Oct. 23, 2008).   Furthermore, "settlement is the preferred means of resolving litigation." *Crawford*, 2008 WL 4724499, at *9 (FLSA collective action).

The FLSA settlement in this case meets the standard for approval. The settlement was the result of vigorously contested litigation with substantial discovery, including depositions of all five Named and four Opt-In Plaintiffs, extensive discovery and exchange of relevant data and arm's-length negotiations.   Bonanni Declaration attached as Exhibit 2. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement after private mediation before a nationally recognized and experienced mediator.  Exhibit 2 ¶ 21. At all times during the settlement negotiation process, negotiations were conducted at arm's-length. *Id.* ¶ 34.  The settlement amount is substantial in light of the overtime actually worked by Floor and Assistant Floor Supervisors.

The proposed allocation of the settlement is also reasonable. It reflects the proportion of damages owed to each eligible Settlement Class Member based the number of overtime shifts he or she worked for Defendant, which is a reasonable approximation of each eligible

Settlement Class Member's damages. Exhibit 1 ¶ 12(d); *see Hens v. Clientlogic Operating Corp.*, No. 05 Civ. 381S, 2010 WL 5490833, at *2 (W.D.N.Y. Dec. 21, 2010) (allocation formula based on each plaintiff's length of service was equitable and reasonable); *Crawford*, 2008 WL 4724499, at *10 (approving allocation plan showing "that the plaintiffs will receive compensation based on the character of their claims and the amount of time they have been employed by the defendant"). Moreover, "[t]he endorsement of the parties' counsel is entitled to significant weight." *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006).

The Court should also approve the Proposed Notices and the Claim and Consent Form attached thereto. *See* Exhibits 1(a), (b), and(f). The Proposed Notices sufficiently informs eligible Settlement Class Members of the terms of the settlement, including the allocation formula, the estimated amount to which they are entitled, the opt-in process, the scope of the release, and the request for attorneys' fees and costs. *Id.*; *see also Wade*, 2014 WL 2535226, at *1 (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup*, 2011 WL 2532922, at *3

(same); *see also Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice that provides "notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Collective").

### C.   The Service Awards to the Named and Opt-In Plaintiffs Should Be Approved As Fair and Reasonable

Plaintiffs' request for approval of a service award of $7,500 each to the Class Representatives $5,000 to the Class Deponents  and $3,500 to the Class Participants as defined in paragraph 12(g) of the Joint Stipulation is fair and reasonable. "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of Class Membership alone."  *Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *accord Date v. Sony Elecs., Inc.*, No. 07 Civ. 15474, 2013 WL 3945981, at *13 (E.D. Mich. July 31, 2013) (awarding service award in common fund case for, *inter alia*, Collective representative's "responding to discovery and sitting for his deposition") (citation omitted); *see also Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit");

*In re Packaged Ice Antitrust Litig.*, No. 98 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Nov. 13, 2012).

Courts acknowledge that named plaintiffs in collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when Collective representative spent "time and effort . . . all to the general benefit of the Collective") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 536 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class Members")); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *3 (D. Conn. July 26, 2012); *Clark*, 2010 WL 1948198, at *9; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for Collective representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the

litigation, he has, for the benefit of the Collective as a whole, undertaken the risk of adverse actions by the employer or co- workers") (internal quotes and citation omitted);[2]

Incentive awards are within the discretion of the court. *See Dallas*, 2013 WL 2197624, at *10-11; *Date*, 2013 WL 3945981, at *13; *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in Collective action cases and are within the discretion of the court"; Incentive "awards are particularly appropriate in the employment context.").

In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of Collective or collective action members, and whether those actions resulted in substantial benefit to Collective or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort

---

[2] See also Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Collective Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) (discussing the importance of aggregation of claims in the prosecution of civil and wage and hour rights); *see also Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("[I]ncentive awards are efficacious ways of encouraging members of a Collective to become Collective representatives and rewarding individual efforts taken on behalf of the Collective.").

they spent in pursuing the litigation. *See, e.g.*, *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013); *see also Dallas*, 2013 WL 2197624, at *10 (in common fund cases, Collective representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of Class Membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same). Here, Plaintiffs satisfy all three factors.

First, the Class Representatives, Class Deponents and Class Participants each took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to those potential collective action members.  As discussed in greater detail in paragraph 12(g) of the Joint Stipulation, each participated in varying levels of substantial pre-suit investigation, including mediation and strategy meetings, provided documents crucial to establishing Plaintiffs' claims and responded to Defendant's discovery requests. Class Representative and Deponents also prepared and sat for full-day depositions. *See*   Exhibit 2 ¶ 42-43; *see also Date*, 2013 WL 3945981, at *13 (awarding service award in common fund case for, *inter*

*alia*, Collective representative's "responding to discovery and sitting for his deposition"); *Bert*, 2008 WL 4693747, at *3 (substantially same); *see also Frank*, 228 F.R.D. at 187 (recognizing the important role that Collective representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents).[3]

These actions have resulted in substantial benefit to the Collective, leading to an overall gross recovery of $450,000 which results in an estimated range of awards from $122 to $1,400 for eligible Settlement Collective.  Exhibit 2 ¶ 39). *see Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at *5-6 (S.D. Ohio May 24, 2013) (in FCRA case, approving service award of $12,500 for named plaintiff when other Class Members recovery would range from $260 to $1,000, out of gross settlement fund of $452,380).

Second, Plaintiffs and Opt-In Plaintiffs undertook substantial direct

---

[3] See also *Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees [] fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S&B Holdings*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer employees put in jeopardy their ability to depend on the employer for references in connection with future employment.").

and indirect risk. The Named Plaintiffs agreed to bring the action in their name, to draft and sign declarations on penalty of perjury, to be deposed, and to testify if there was a trial.   Exhibit 2 ¶ 42-43.   Opt-In Plaintiffs similarly agreed to be party plaintiffs in the case, to be deposed, and to testify if there was a trial.  *Id.*  In so doing, Plaintiffs and Opt-In Plaintiffs assumed the risk of retaliation and blacklisting, particularly as they are still employed with Defendant. *Id*.; *see Frank*, 228 F.R.D. at 187 (Incentive "awards are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the Collective as a whole, undertaken the risk of adverse actions by the employer or co-workers")*; see also Bozak*, 2014 WL 3778211, at *5 (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A Collective representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); *Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions

taken against them by their former employer and former co-workers").[4]

Third, Plaintiffs and Opt-In Plaintiffs spent a significant amount of time and effort in pursing this litigation on behalf of the eligible Settlement Class Members. This included the time and effort they expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent in assist in the preparation and review of the complaint, providing declarations in support of Plaintiffs' collective certification motion, responding to Defendant's document requests, and preparing and sitting for full-day depositions.  Exhibit 2 ¶ 42-43; *Date*, 2013 WL 3945981, at *13; *Bert*, 2008 WL 4693747, at *3.

---

[4] Plaintiffs acknowledge that no adverse action was taken by Defendant against any person arising out of their participation in this case.  Even where there is not a record of actual retaliation, collective representatives merit recognition for assuming the risk of retaliation for the sake of absent Class Members. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone*, 2011 WL 5148650, at *7 ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, Collective representatives merit recognition for assuming the risk of such for the sake of absent Class Members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Additionally, the amount of the requested service awards is reasonable and consistent with awards that have been granted in employment Collective and collective actions in this Circuit. *See, e.g.*, *Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("The modest Collective representative award requests of $10,000 to each of the two Collective Representatives have been tailored to compensate each Collective Representative in proportion to his or her time and effort in prosecuting the claims asserted in this [FLSA] action."); *Bert*, 2008 WL 4693747, at *1, *3 (finding service award of $10,000 to five Collective representatives was "rather modest" and "fair and reasonable" in employment discrimination case). In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards that are larger than what Plaintiffs request here.[5]

---

[5] *See Swigart*, 2014 WL 3447947, at *7 ($10,000); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each Collective representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell*, 2012 WL 1320124, at *14-15 (approving service payments of $10,000 and $15,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at

### D.    Attorneys' Fees and Costs Should be Approved as Fair and Reasonable

The FLSA provides for reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b) ("The court in [an action to recover under FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *accord United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984). Defendant has agreed not to object to any request by Plaintiff for an award of attorney fees up to $150,000, or one-third of the settlement for their attorneys' fees, as well as Plaintiffs' reasonable costs which to date total $12,500. Exhibit 1 (Joint Stipulation) ¶11.[6]

"The purpose of the FLSA attorney's fees provision is to 'insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Farmer v. Ottawa*

---

*7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to Collective representatives and opt- ins); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving $15,000 and $10,000 to named plaintiffs).

[6] Defendant does not object to the fee request by counsel for Plaintiffs. Consistent with the Stipulation and Settlement, Defendant states that it does not object to a reasonable fee and costs award that does not exceed the sum of $150,000 in fees and $12,500 in costs.

*Cnty.*, 211 F.3d 1268, 2000 WL 420698, at *7 (6th Cir. 2000) (citing *United Slate*, 732 F.2d at 502); *see Wilson v. D & N Masonry, Inc.*, No. 12 Civ. 922, 2014 WL 1789136, at *1 (S.D. Ohio May 5, 2014) ("The purpose of the FLSA attorney fees provision" is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (citing district court citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994)) (internal quotes omitted); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) ("The purpose of allowing an award of attorney's fees under FLSA cases is to encourage employees to vindicate what Congress considers an important right to receive wages designed to ensure a minimum standard of living.").[7]

---

[7] See *also Bozak*, 2014 WL 3778211, at *6 (S.D.N.Y. Jan. 7, 2010) ("Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.") (internal quotes and citation omitted). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Fegley*, 19 F.3d at 1134 ("The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.") (citation and internal quotation marks omitted); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979) (observing that "broad remedial purpose" of FLSA should be given "liberal construction"); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974) (discussing "society's stake in rewarding attorneys who produce . . . benefits in order to maintain an incentive to others"); *Bozak*, 2014 WL 3778211, at *6

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Turner v. Perry Twp., Ohio*, No. 03 Civ. 455, 2005 WL 6573783, at *3 (S.D. Ohio Dec. 30, 2005) ("[T]he Sixth Circuit has emphasized the private attorney general theory of fee recovery: the importance of bringing [FLSA] cases, even if only nominal damages, are recovered to vindicate employee rights and Congressional policy"); *see also Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16,2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y.Aug. 23, 2010); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7,2010) (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

In collective action wage and hour lawsuits, public policy favors a

---

(collecting cases); *Vazquez v. Ranieri Cheese Corp.*, No. 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[T]he fee provisions contained in the FLSA . . . [was] designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements.")(citation omitted).

common fund attorneys' fee award, which Courts generally determine based upon the percentage-of-fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the Collective"); *Rawlings v. Prudential-Bach Props., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993) (finding clear "trend towards adoption of a percentage of the fund method in [common fund] cases"); *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *17 (stating Sixth Circuit has recognized numerous advantages to percentage of fund method); *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) ("The fact that the damages which could have been claimed by each Collective member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 531-32 (finding application of "percentage-of-the-[common-]fund approach appropriate); *Aros*, 2012 WL 3060470, at *5; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011); *see also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) ("[I]n common-fund cases, we require only that awards of attorney's fees

be reasonable under the circumstances.") (citation and internal quotes omitted).

A percentage of the fund approach fosters judicial economy by eliminating a detailed and time-consuming lodestar analysis. *Rawlings*, 9 F.3d at 516-17. This is an important feature because "the lodestar method is too cumbersome and time-consuming for the resources of the Court." *In re Cardizem CD*, 218 F.R.D. at 532 (citation and internal quotes omitted). The lodestar approach burdens a court with the task of reviewing extensive time records reflecting many hours of attorney time. *Rawlings*, 9 F.3d at 516-17. In contrast, the percentage of the fund approach is "easy to calculate" and it "establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery." *Id.* at 516. Crucially, "the percentage of the fund method more accurately reflects the results achieved." *Id.*

In applying the common fund method, courts award attorneys' fees as a percentage of the entire maximum gross settlement fund—and not as a percentage of the amount claimed—even where amounts to be paid to settlement Class Members who do not file claims revert to Defendant. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980) (stating that this approach "rectifies inequity by requiring every member of the

Collective to share attorney's fees to the same extent that he can share the recovery"); *Moulton*, 581 F.3d at 352 (rejecting "objectors focus on the amount *claimed* rather than the amount *allocated*"); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-47 (2d Cir. 2007) (holding that because the entire fund was created through the efforts of counsel, that the allocation of fees by percentage should be awarded based on the total funds made available, whether claimed or not); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that Collective counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.") (quoting Herbert B. Newberg & Alba Conte, Newberg on Collective Actions § 14.03 (3d ed. 1992)); *Williams v. MGM-Pathe Commc'ns. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (reversing district court's award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of funds made available).

### 1.   An Award of One-Third of the Fund Is Reasonable and Should Be Granted

Plaintiffs request an award of $150,000, or one-third of the settlement common fund, as attorneys' fees.  The central requirement for

an award of fees is that it be reasonable. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); Rawlings, 9 F.3d at 516 ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *Dillworth v. Case Farms Processing, Inc.*, No. 08 Civ. 1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (using reasonableness standard in FLSA context).

The work that Plaintiffs' Counsel has performed in litigating and settling this case demonstrates their commitment to the FLSA collective and to representing the collective's interests, and establishes the reasonableness of their fees. Plaintiffs' Counsel has committed substantial resources to prosecuting this case. The work that Plaintiffs' Counsel has performed including investigating claims, reviewing documents, drafting the complaint, preparing for and defending the Named and Opt-In Plaintiffs' depositions, preparing for and attending mediation, and negotiating the settlement terms and reducing them to a formal settlement agreement, was significant and contributed to the substantial recovery obtained on behalf of the collective. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *7 (S.D.N.Y. Oct. 5, 2012), (approving requested fee where "[t]he work that Collective Counsel . . . performed in litigating and settling th[e] case demonstrate[d]

their commitment to the Collective and to representing the Collective's interests").

Since the filing of the original complaint in August 1, 2014, Plaintiffs' Counsel have spent 830 attorney, paralegal, and support staff hours prosecuting this case.   Exhibit 2 ¶ 45.   Multiplied by each attorney's, paralegal's, and staff member's hourly rate, this results in a total lodestar amount of approximately $315,000.   Exhibit 2 ¶ 45-46 Plaintiffs' Counsel's request for $150,000 represents an average fee of $166.67 per hour and is reasonable fee for the community.

Here, Plaintiffs' Counsel has secured a substantial payment of up to $450,000  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (stating that a percentage of the fund will compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result.  Bonanni Decl. Exhibit 2 ¶ 48; *see also Dillworth*, 2010 WL 776933, at *8 (citing as justification for one-

third recovery from common fund "[t]he contingent nature of the fee agreement," which "meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved"). The requested award is consistent with the norms of Collective and collective litigation in this circuit. *See, e.g.*, *Dillworth*, 2010 WL 776933, at *8 (finding attorneys' fees award of one-third of common fund was "reasonable and has been approved in similar FLSA collective actions in [the Northern District of Ohio]") (collecting cases); *Bessey*, 2007 WL 3173972, at *4 (approving attorneys' fees of approximately 33% of the common fund in FLSA case and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in Collective actions average around one-third of the recovery") (citation omitted).[8]

The fee requested by Plaintiffs' Counsel also is reasonable because they will continue to perform work on behalf of the collective in

---

[8] See also *In re Se. Milk Antitrust Litig.*, No. 08 MD 1000, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (finding reasonable award of one-third of settlement fund; granting $52,866,667, in addition to previous award of $48,333,333); *Dallas*, 2013 WL 2197624, at *12 (preliminarily approving attorneys' fees of one-third of the settlement amount); *In re Packaged Ice*, 2011 WL 6209188, at *19 (noting that an award of "close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex Collective actions").

implementing the settlement, but will not make a supplemental fee application. *See Bozak*, 2014 WL 3778211, at *8.  Plaintiffs' Counsel anticipate that they will be required to spend substantial additional time administering the settlement in the future, including answering questions from eligible Settlement Class Members about the case and working with the Settlement Administrator.   Exhibit 2 ¶ 51-52. Plaintiffs' Counsel have a continuing obligation to represent the collective during the settlement approval process and the disbursement phase.

Plaintiffs' Counsel also have incurred $12,500 in out-of-pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel, and Plaintiffs' portion of the mediator's fees.  Exhibit 2 (B) ¶ 49; (Summary of PMPR out-of-pocket expenses); *see Griffin*, 2013 WL 6511860, at *9 (approving payment of costs when "documented by firm and by category of expense . . . and appear reasonable"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535 (approving costs as "type routinely billed by attorneys to paying clients in similar cases"). Accordingly, Plaintiffs' Counsel's request for attorneys' fees of $150,000 and reimbursement of actual costs of

$12,500 is reasonable and should be approved.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the $450,000 settlement set forth in the Joint Stipulation of Settlement and R Release; (2) approving the proposed Notice of Settlement and Claim and Consent Form and direct their distribution; (3) approving service awards to Class Representatives, Class Deponents and Class Participants for their service to the collective; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees and an additional reimbursement of costs and litigation expenses; and (5) incorporating the terms of the Joint Stipulation of Settlement and Release.

By: */s/ Megan A. Bonanni P52079*
Megan A. Bonanni P52079
Robert W. Palmer P31704
Pitt McGehee Palmer & Rivers, P.C.
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mbonanni@pittlawpc.com
rpalmer@pittlawpc.com

Attorneys for Plaintiffs

Dated: April 19, 2016

By: *Elayna J. Youchah w/consent*
Elayna J. Youchah, Bar No. 5837
youchahe@jacksonlewis.com
Jackson Lewis P.C.
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702) 921-2460

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on April 19, 2016.

Signature:  <u>/s/ Regina Bell</u>
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
rbell@pittlawpc.com